IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:06CR3019-2 |
| | ) | |
| v. | ) | |
| | ) | |
| RAUL ORTEGA MIJARES, | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| Defendant. | ) | |

    This matter is before me for initial review[1] of Raul Ortega Mijares' Motion to Vacate under 28 U.S.C. § 2255. (Filing 135.) Because it plainly appears from the files and records that the defendant is not entitled to relief, I will deny and dismiss the motion with prejudice.

## I.  BACKGROUND

    The defendant signed a non-cooperation plea agreement with the government that contained no sentencing promises and he entered a plea of guilty to conspiracy to distribute more than 500 grams of methamphetamine. (E.g., filings 42, 43 and 52.)

---

[1]When a § 2255 motion is forwarded to a judge,

> [t]he judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States Attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

Rule 4(b) of the *Rules Governing Section 2255 Proceedings for the United States District Courts.*

By appointment, he was represented by John F. Aman. Mr. Aman is a very experienced criminal defense lawyer.

At the time he appeared before Judge Piester to enter his plea, the defendant stated that Aman had satisfactorily investigated the case, that Aman had explained the law and the procedures that applied to the case, and that the defendant was satisfied with Aman's representation. (Filing 52 at CM/ECF p. 10.) The defendant specifically acknowledged that there was a statutory minimum sentence of 10 years that would be applied in his case. In particular, the defendant understood that "unless there is some downward departure from the statutory minimum in this case, as a result of your plea here today, you will be going to prison for at least ten years." (Filing 54 at CM/ECF p. 13.)

The defendant added that Aman, with the assistance of an interpreter, had gone over the plea agreement paragraph by paragraph with the defendant and the defendant stated that Aman had answered all of the defendant's questions regarding the plea agreement. (Filing 52 at CM/ECF p. 22.) The defendant specifically represented that he knew and understood the plea agreement. (Filing 52 at CM/ECF p. 23.) The plea agreement clearly recited that: "You understand that by pleading guilty . . . you are exposed to imprisonment *of not less than 10 years* . . . ." (Filing 43 at CM/ECF p. 1) (emphasis added).) Nothing in the plea agreement suggested that the sentence would be anything less than 10 years.

The defendant also told Judge Piester that no one had promised him anything except for that which was set forth in the written plea agreement. (Filing 52 at CM/ECF p. 23.) The defendant added that no one had threatened him to induce his plea, no one had told him that he would get a light sentence if he entered a guilty plea and no one had told him exactly what sentence would be imposed if entered a guilty plea. (Filing 52 at CM/ECF p. 24.)

The matter then proceeded to sentencing. It became apparent that the defendant might qualify for the safety-valve, but he was reluctant to talk to the authorities. Aman brought that concern to my attention both in writing and orally. (E.g., filings 60, 62 and filing 104.) On two occasions, the defendant appeared before me and I continued sentencing so the defendant could comply with requirements of the "safety-valve" by submitting to an interview with the government. (Filing 104 at CM/ECF pp. 2-4 (November 14, 2006); filing 104 at CM/ECF pp. 5-6 (December 20, 2006).)

I specifically advised the defendant about the requirements of the safety-valve and I made it clear that the defendant need not cooperate with the government beyond giving the required interview and providing complete and truthful information. (E.g., filing 104 at CM/ECF pp. 2-4.) The defendant told me he understood and he added, "That's great, all right." (Filing 104 at CM/ECF p. 4.)

After two tries, the defendant failed to tell the authorities all he knew. Indeed, he agreed with his lawyer's account of his refusal to provide the required information:

> THE COURT: . . . That, then, brings us to the presentence report. There are two motions filed: one Filing 60, an unopposed motion to review safety valve and Filing 62, another unopposed motion to review safety valve. This matter has been continued with respect to the issue of the safety valve. Where do we stand?
>
> MS. WAGNER [the prosecutor]: If I may, Your Honor, we did conduct an interview on the 8th of December, 2006, with the defendant for a safety valve. But because of other information available to law enforcement, we did not believe that the defendant had been fully forthcoming in his interview about his involvement with the offense that he has been charged. This morning officers and Ms. Olgo Soto, myself, Mr. Aman and the defendant sat down again and went through safety valve parameters again with the defendant, and he declined to give any additional information.

>THE COURT: And Ms. Soto is an interpreter, is that right?
>
>MS. WAGNER: Yes.
>
>THE COURT: All right. Mr. Aman?
>
>MR. AMAN: Your Honor, what Ms. Wagner has told the Court is correct. We went through two complete interviews, focusing the – narrowing the focus of those interviews. He did give – Mr. Ortega Mijares was forthcoming on a lot of his information; however, there were two areas, and to be specific with one – about a man named Valentino or Valentine, and another about a man named Jaime. The first one was in Arizona. The second one was in Grand Island. I was not supplied detailed information, but I was told those were the two areas. I have discussed the matter at great length with Mr. Ortega Mijares and with an interpreter, Alex Perez, at the Saline County Corrections. Between those two interviews, we had the second interview today, it's my – and Mr. Ortega Mijares just said he didn't want to say anything else about that. He didn't want to cooperate. I did review at some length that this was not a cooperation interview, this was a safety valve interview. I know that the Court has gone through what a safety valve interview is and has made it very clear to Mr. Ortega Mijares from the last time we were here and has given him the opportunity, but he just has decided not to partake of the opportunity to have the safety valve granted. He said he would just go ahead and take whatever time the Court gave him in the interview.
>
>THE COURT: Thank you. Mr. Ortega Mijares, did you hear what your lawyer just told me?
>
>THE DEFENDANT: Yes.
>
>THE COURT: Do you agree with him?
>
>THE DEFENDANT: Yes.

(Filing 104 at CM/ECF pp. 8-9.)

Accordingly, I sentenced the defendant to 120 months in prison, the statutory minimum sentence. (Filing 84 (judgment); filing 85 (statement of reasons).) While I gave the defendant a reduction of three points for acceptance of responsibility, I did not give the defendant a reduction for the safety-valve as the defendant had not fulfilled the requirements. (E.g., filing 83 at CM/ECF pp. 7-8 ¶¶ 33-42 (presentence report; offense level computations); filing 85 at CM/ECF p. 1 ¶ 3(total offense level).)

The defendant appealed. On appeal, the defendant asserted that I had mishandled the safety-valve question. The Court of Appeals rejected that argument, stating: "In particular, we find that the district court's unobjected-to-refusal to grant safety-valve relief was not error, plain or otherwise, . . . because Mijares admitted that he had refused to provide certain information about his offense that had been requested by the government . . . ." (Filing 117 at CM/ECF p. 2 (citations omitted).) As a result, the Court of Appeals affirmed.

The judgment of the Court of Appeals was entered on February 19, 2009. (Filing 116.) The defendant did not file a petition for certiorari with the Supreme Court. The defendant's 2255 motion was filed in this court on May 21, 2009, but it was tendered to prison authorities on May 18, 2009. (Filing 135 at CM/ECF p. 1 and CM/ECF p. 10.) Considering the "prison mail box rule," the motion is deemed to have been filed on May 18, 2009. *See*, *e.g.*, *Grady v. United States*, 269 F.3d 913 (8th Cir. 2001) (benefits of the prison mailbox rule, under which appeal is timely filed if deposited in institution's internal mail system on or before last day for filing apply to pro se federal prisoners who move to vacate, set aside or correct sentences). Where, as here, there is an unsuccessful appeal, but no petition for certiorari is filed, the statute of limitations for 2255 motions begins to run 90 days after the Court of Appeals' judgment is entered. *Clay v. United States*, 537 U.S. 522, 532 (2003) ("[F]or federal criminal defendants who do not file a petition for certiorari . . . on direct review, § 2255's one-year statute of limitations period starts to run when the time for seeking such review expires."); Sup. Ct. R. 13.1 (stating that a petition for

certiorari must be filed within 90 days after the judgment (and not the mandate) is entered). *See also United States v. Martin*, 408 F.3d 1089, 1090 (8th Cir. 2005) (concluding that where Court of Appeals opinion was dated December 12, 2001, and no petition for certiorari was submitted, the one-year period for filing a 2255 motion began to run on March 12, 2002). Under these circumstances, the 2255 motion was timely because it was submitted to prison authorities for transmission to this court within one year and 90 days after the Court of Appeals' judgment was entered.

## *II. ANALYSIS*

The defendant asserts a jumble of frivolous arguments that boil down to the claim that he was treated unfairly regarding the safety-valve and Aman should be held responsible. I reject all of the defendant's arguments because they obviously have no legal or factual merit. Only two specific points are worth making.

First, the Court of Appeals has already considered and rejected the defendant's claim that the safety-valve matter was mishandled and the defendant cannot assert "the same claim in different clothes" in this 2255 *motion. See, e.g., United States v. Davis*, 406 F.3d 505, 511 (8th Cir. 2005) (denying 2255 motion that attempted to recast and assert an argument resolved on direct appeal; citing *Dall v. United States*, 957 F.2d 571, 572 (8th Cir.1992) ("Claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255.").)

Second, the assertion that Aman somehow engaged in malpractice regarding his advice on the safety-valve (including that Aman made promises about the sentence that would be imposed) is conclusively rebutted by the record. Indeed, the defendant's own statements make plain that no one promised him anything and his refusal to provide the required information was knowing and intelligent and voluntary and based upon accurate legal advice. In short, the defendant made an unhurried and informed choice, and he must live with the results.

IT IS ORDERED that Raul Ortega Mijares' Motion to Vacate under 28 U.S.C. § 2255 (filing 135) is denied and dismissed with prejudice. A separate judgment will be issued.

DATED this 22nd day of June, 2009.

>BY THE COURT:
>
>*s/Richard G. Kopf*
>United States District Judge